# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

          v.

JAMES MARCELLO and MICHAEL
MARCELLO,

     Defendants.

No. 02 CR 1050 - 2, 8
Judge James B. Zagel

## <u>MEMORANDUM OPINION AND ORDER</u>

The Government petitioned for the pre-trial detention of Defendants James and Michael
Marcello. During the hearing on its motion, the Government sought leave for a victim of
Defendants' alleged crimes to offer an oral statement opposing their release. I prohibited the
statement though I welcomed a submission in writing. My decision to deny the victim an
opportunity to speak in open court was based on the clear language of a recently enacted statute
granting victims an opportunity to be "reasonably heard" at detention hearings. I found that the
statute, which contains both a reasonableness requirement and a legal term of art (the opportunity
to be "heard"), does not require the admission of oral statements in every situation, particularly
one in which the victim's proposed statement was not material to the decision at hand.

In October 2004, Congress passed legislation expanding the scope of rights afforded to
both crime victims and those accused of criminal activity. As codified in 18 U.S.C. § 3771, the
"Crime Victims' Rights" component of the legislation included the right "to be reasonably heard
at any public proceeding in the district court involving release, plea, sentencing or any parole

proceeding." 18 U.S.C. § 3771(a)(4).[1]  The statute clearly designates that the right to be heard by

the Court is held by the victim, who may assert the right without motion by the Government.  18

U.S.C. § 3771(d)(1) ("[t]he crime victim or the crime victim's lawful representative, and the

attorney for the Government may assert the rights . . .").  Congress further emphasized the

importance of the right by providing that an adverse ruling by the trial court may be reviewed by

mandamus and that the appellate court is required to decide the question within 72 hours after the

petition is filed.  18 U.S.C. § 3771(d)(3).  The policy decision underlying the statute is, of course,

not mine to accept or reject.  It is a matter left to Congress.[2]

At issue in this case is the extent to which Congress provided a right for crime victims to

make oral statements to the Court during the course of a criminal prosecution, considering both

the nature of this hearing and the likely content of the victim-witness's statement.  The

---

[1]  The Senate first approved the "Crime Victims Rights' Act" in April 2004.  The House of Representatives did not consider the legislation until October 2004 when it was added to the "Justice for All Act of 2004," a bill that expanded laws governing DNA testing.  The House and Senate approved the combined legislation on October 6, 2004 and October 9, 2004 respectively.

[2]  For what it is worth, my personal opinion is that the policy of hearing the victim is wise. From 1965 until 1977, when I served as a state court prosecutor, and from 1980 until 1987, when I served as Director of the Illinois State Police, I observed that many police officers and prosecutors were uneasy with the concept that the sole parties to a criminal prosecution were the People of the State of Illinois and the defendant.  Many of us held the view that the victim was, in a moral sense, a party to the case and believed that the victim should always be given the opportunity to testify at all sentencing hearings and some bond hearings.  Although I never encountered one, I accept that there might be some judges who are unwilling to hear a victim's views despite the likelihood that the victim's statements would be material and relevant to the issue before the court.

After a serious misstep in the wrong direction, the Supreme Court of the United States also decided that victims ought to be heard in court.  In *Payne v. Tennessee,* 501 U.S. 808 (1991), the Court reversed a prior decision holding that the victim's personal characteristics and the emotional impact of a murder on the victim's family would not be relevant at a capital sentencing hearing.  This reversal came within four years of the original, unfortunate decision in *Booth v. Maryland*, 482 U.S. 496 (1987).

Government contends that under the terms of the statute, I was required to hear the oral statement of one of the victims of Defendants' alleged crimes.[3]  Defendants are alleged members of a criminal organization (the "Chicago Outfit"), and the victim who wished to speak was the son of a man allegedly murdered as part of the conspiracy in which Defendants allegedly participated.[4]

A critical question in deciding whether to allow the victim to speak at Defendant's sentencing hearing was whether the victim could have said anything that would be material to the decision to detain or release Defendants.  The sole subject of the hearing at which the victim sought to make an oral statement was the detention of Defendants' pending trial.  Prior to the detention hearing Defendants entered a plea of not guilty.  The trial is yet to be held and quite obviously there is no sentencing proceeding on the horizon.

Therefore there were at least three matters to which the victim's statement might have been relevant or material at the detention hearing: the strength of the case against Defendants, the seriousness of the crimes they are alleged to have committed, and the reasonable apprehension of personal danger to the victim.  The murder of the victim's father occurred more than twenty years ago.  According to the Government, the victim has no personal knowledge of any fact that would

---

[3]I note that the prosecutors in this case fulfilled their obligation to press this point though it might have been difficult for them to do so.  Most prosecutors believe they capably present the viewpoint of the victim to the Court.  Implicit in the recent legislative judgment of Congress is a suggestion that the federal prosecutors are not able to do this without giving the victim a personal right to speak.  I hope that Congress did not conclude that the professional attorneys of the Department of Justice are unable to communicate the real plight of the victim using their own considerable skills as well as the power to call the victim to the stand – a power they have had and used for decades.

[4]The statute deems family members of murder victims to be victims, which of course they are.  18 U.S.C. § 3771(e) ("the term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense").

tend to show whether or not Defendants are guilty of the charged offenses.[5]  Moreover, there is

no doubt as to the seriousness of the crimes of which Defendants are accused and particularly the

one about which the victim would testify: murder.  Finally, there is no claim that the victim's

welfare would be endangered by Defendants if they were released.

The victim has been given an opportunity to state in writing what he might say that would

be relevant or material to the issue of Defendants' detention so that I might learn whether there is

something more to his statement than what the Government has suggested.  Were there something

more, I would hear his oral presentation.  No written statement has been delivered to me.  The

Government nonetheless maintains that I must hear an oral account of the victim's views even if

they would have no bearing on the decision presently before me.

The Government bases this extraordinary argument on language found in the statute's

rather limited legislative history.  Because I find the statute's language to be clear, I do not find it

necessary to turn to the legislative history to discern the meaning of the statute.  *See Estate of*

*Cowser v. Commissioner*, 736 F.2d 1168, 1171 (7th Cir. 1984) ("[i]t is a common rule of

statutory construction that when the plain language of a statute is clear, courts need look no

farther than those words in interpreting the statute") (citation omitted).

As I noted earlier, the relevant section of the statute provides crime victims with the right

"to be reasonably heard at any public proceeding in the district court involving release, plea,

---

[5]I suspect that the only statement the victim could make about the weight of the evidence
is that he believes Defendants are guilty because the prosecutor says so.  I do not think that the
prosecutors have disclosed to the victim all of the evidence in the case such that the victim could
make an informed judgment about the weight of the evidence.  For me to consider the likelihood
of guilt based solely on a witness's faith in the prosecution would violate the law that an
indictment is merely an accusation.  If Defendants are ultimately convicted of the crimes charged
I would without hesitation hear the oral statement of the victim at sentencing.

sentencing, or any parole hearing."  18 U.S.C. § 3771(a)(4).  The statute clearly and

unambiguously grants crime victims the right to be reasonably heard.  The plain language of the

statute does not mandate oral presentation of the victim's statement.  While the word "heard"

does imply oral presentation in ordinary English, it does not have that meaning in courts where it

is a term of art.

Being "reasonably heard" in the ordinary legal and statutory meaning typically includes

consideration of the papers alone.  *See, e.g., Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 894 (1st

Cir. 1988) ("a matter can adequately be 'heard' on the papers" if "given the nature and

circumstance of the case . . . the parties ha[d] a fair opportunity to present relevant facts and

arguments to the court"); *see also Commodity Futures Trading Com. v. Premex, Inc.*, 655 F.2d

779, 783 n.2 (7th Cir. 1981) (explaining that district court's refusal to grant an evidentiary

hearing was not a denial of due process when documentary evidence was sufficient).[6]  Motions

are routinely heard and decided on paper; most matters in open court are heard on papers

supplemented only by the arguments of counsel.  The use of terms of art does not strip otherwise

unambiguous statutory language of its clear meaning.

> [W]here Congress borrows terms of art in which are accumulated
> the legal tradition and meaning of centuries of practice, it
> presumably knows and adopts the cluster of ideas that were
> attached to each borrowed word in the body of learning from which
> it was taken and the meaning its use will convey to the judicial
> mind unless otherwise instructed.  In such case, absence of contrary
> direction may be taken as satisfaction with widely accepted
> definitions, not as a departure from them.

---

[6]*See also In re GMC*, 110 F.3d 1003, 1016 (4th Cir. 1997) (holding that due process did
not require a formal evidentiary hearing when the party seeking a hearing failed to identify a
witness whose live testimony "would aid the Court's decisional process" given the party's
opportunity to submit documentary evidence).

*Morisette v. United States*, 342 U.S. 246, 263 (1952). I conclude that the statute requires only that a victim be reasonably heard, and that Congress's use of that term of art does not require that a trial court accept oral statements in all situations.

Congress could have granted victims a specific right to speak, rather than to be reasonably heard. Congress imposed just such a speaking requirement in *Fed. R. Crim. P. 32*, which commands the court to "address the defendant personally in order to permit the defendant to speak." *Fed. R. Crim. P. 32(i)(4)*. No such requirement appears in the language of § 3771. The only possible source of support for the Government's argument that I must hear the victim speak in open court is the statute's legislative history, the yoke upon which the Government placed the weight of its argument during the detention hearing.

This case offers a textbook example of the risks in turning too quickly to legislative history when seeking the meaning of a statute. First, little legislative history exists. The relevant sections of the bill appear to have sailed through both the House of Representatives and Senate without serious committee review or floor debate. Second, the only legislative history addressing the provision at issue in this case consists of the statements of the bill's primary author and the minority co-sponsor.[7] Nowhere in the legislative history provided by the Government (nor found independently) does one find the debate or exchange of ideas that more frequently accompanies the art of law-crafting. Third, I observe that the bill's overwhelming support (and here I reiterate

---

[7]The primary author of the bill, Senator Kyl, first discussed the bill's provisions, including the right to be reasonably heard, when it was originally presented in the Senate in April 2004. *See* 53 Cong. Rec. S4260 (daily ed. Apr. 22, 2004) (statements of Sen. Kyl). Speaking for the minority, Senator Feinstein concurred with Senator Kyl's observations about the right to be reasonably heard. *See id*. at S4268 (statements of Sen. Feinstein and Sen. Kyl). Senator Kyl's comments before final passage of the legislation in October 2004 are an abbreviated version of his April 2004 discussion with Senator Feinstein.

its title, the "Crime Victims' Rights Act") on its first vote in the Senate offers no further insight into the meaning of any specific provision within the bill, including those employing legal terms of art such as the right to be "reasonably heard."[8]

These observations about the value of the statute's legislative history do suggest a third, policy-based justification for concluding that the statute does not mandate consideration of this victim's oral statement at the detention hearing. Through the Crime Victims' Rights Act, Congress sought to balance the rights of the victim against the right of the defendant in the

---

[8]Since the government emphasized the statute's legislative history in arguing for admission of the victim's oral statement, I take a moment here to consider what little the legislative history has to offer. The particular legislative history that Government regards as relevant to this issue consists of the statement of the primary drafter of the legislation, who identified and explained each provision of the statute on the floor of the Senate. *See* 128 Cong. Rec. S10910 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl). When it came to the language at issue here, the right to be "reasonably heard," the Senator did not say that the statutory language required oral presentation in every situation. Instead, he stated:

> It is not the intent of the term "reasonably" in the phrase "to be reasonably heard" to provide any excuse for denying a victim the right to appear in person and directly address the court . . . [t]his section would fail in its intent if courts determined that written, rather than oral communication, could generally satisfy this right.

*Id.* at S10911. Were I to consider the legislative history, I would find the Senator's language instructive. In fact, I do not hold here that written rather than oral communication generally satisfies the right embodied in § 3771. Rather, I find that in detention hearings, the victim's right to be reasonably heard does not mandate oral statements, particularly when the witness has no personal knowledge of the guilt of the defendant(s) and offers an opinion only on a matter that is not in dispute: that the crime is the most serious one known to law.

There is little else in the legislative history to support the Government's claim that I was required to consider victim's oral statements. There were no Committee Hearings of the usual sort conducted with respect to this legislation, which was considered by the Senate in April 2004 and was subsequently attached to an October 2004 House bill addressing the need for DNA testing. The October legislation easily passed both chambers. What little record exists focuses primarily on the goals of the legislation as a whole and those individuals whose experiences inspired the legislation.

courtroom.[9]  But the scales are not as unbalanced as the Government would have me believe. Given changes in the *Federal Rules of Criminal Procedure*, victims have a right to speak in open court in a manner analogous to the defendant's personal right of allocution at sentencing.  *See Fed R. Crim. Pro. 32(i)(4)(A)-(B).*  Today, both defendant and victim have the right to speak without being sworn as a witness before sentence is passed.  *Id.*

Further, a defendant's right to speak in court is not without serious constraints.  First, the defendant's right to speak in open court, without being sworn as a witness, arises only on the occasion of sentencing.  *Id.*  Second, this right is not absolute.  *See, e.g., United States v. Tidwell*, 178 F.3d 946, 950 (7th Cir. 1999) (Ripple, J. dissenting) (observing that the right of allocution is not without constraints and noting that "the courts of appeals have been required to delineate those resentencing situations in which policies embodied in the right of allocution are at stake and those in which its invocation would be superfluous").[10]  Moreover, when a defendant seeks to testify as a witness, he or she has the absolute right to decide personally whether to testify but the testimony is limited to matters which are relevant and material and about which the defendant is competent to testify.  *See, e.g., Fed. R. Evid. 401 - 404.*  Given these limits on a defendant's testimony, the Government's proposed reading of 18 U.S.C. §3771, rendering oral victim statements at detention hearings mandatory even when immaterial, would hardly achieve balance between the rights of victims and defendants.

_____

[9]Another key component of the legislation was a provision requiring that victims receive notification of pending proceedings, particularly those involving the release of individuals convicted of perpetrating a crime against them.  18 U.S.C. § 3771(a)(2).  That right is not at issue in the case before me.

[10]*See also United States v. Barnes*, 948 F.2d 325, 329 (7th Cir. 1991) (noting, in a case involving sentencing on remand, that "[t]he right of allocution is implicated only before the imposition of sentence, not in all sentencing situations").

The problem I confront in this case rests on the far edge of the territory of victims' rights, well beyond the mainstream of victims' rights questions. While it is true that a victim's statements will (at least at sentencing and prison release hearings) almost always be relevant, material and spoken from personal knowledge, this will not always be the case at hearings on bond for a defendant who is, as Congress has mandated, clothed with the presumption of innocence and against whom the victim can offer no material information. The language of 18 U.S.C. § 3771 clearly requires that victims of crimes be afforded the right to be reasonably heard at detention hearings. In light of the statute's clear language, the purpose of the detention hearing and the content of the testimony sought to be introduced in this case, I find that this victim's right to be reasonably heard could be satisfied through means other than an oral statement.

For these reasons I deny the Government's motion for the victim to make a statement in open court opposing Defendant's pre-trial release. I note that I have ordered Defendants to be detained pending trial. Since the right to make an oral presentation to the Court, if it exists, is personal to the victim, my order detaining Defendants does not moot the question raised by the Government. To gain speedy resolution of this important question of law, on which reasonable minds may differ, I urge the Government or the witness to seek the mandamus remedy provided by Congress in § 3771(c)(3).

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: May 5, 2005