# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,

        v.

NICHOLAS CALABRESE, et al.

No. 02 CR 1050-2
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

## I.    BACKGROUND

      Defendant James Marcello ("Defendant" or "Mr. Marcello") moves to suppress certain intercepted conversations and all evidence derived therefrom. He argues that the Government failed to comply with the sealing requirements contained in Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), as amended, 18 U.S.C. § 2510 *et seq*, and that the recordings should therefore be suppressed.[1] The potential evidence in question was all intercepted while Mr. Marcello was incarcerated at FCI Milan, Michigan. The Government recorded conversations Mr. Marcello had with his brother and others in the prison visiting room.

      In its response to Defendant's Motion to Suppress, the Government argues that it complied with Title III's sealing requirements. Nowhere in that response does the Government suggest that Title III might not apply. However, in a brief the Government later filed, in response to a motion made by a different defendant (Michael Marcello), the Government argued that Title III does not apply at all in the prison context. The Government argued, therefore, that Michael Marcello's motion to suppress should be denied irrespective of whether the sealing requirements in § 2518 were followed. In that later-filed response, the Government sought leave to retroactively apply the argument regarding Title III's applicability to James Marcello's motion.

---

[1]Mr. Marcello also argues that the Government failed to obtain proper Attorney General authorization as required by 18 U.S.C. § 2516(1). However, since I conclude that Title III does not apply, I need not, and indeed do not reach the question of whether Attorney General authorization was properly obtained.

I had originally scheduled a hearing solely to assess whether the Government complied with the sealing requirements. In light of the Government's new argument, I provided Defendant with an opportunity to file supplemental briefing. The hearing, which occurred on June 15, 2007, then addressed both (1) whether Title III applies in this context; and (2) assuming Title III *does* apply, whether the Government complied with the sealing requirements in § 2518(8).

## II. STATUTORY FRAMEWORK

The sealing requirement is contained in 18 U.S.C. § 2518(8)(a). It states, in pertinent part:

> The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.

18 U.S.C. § 2518(8)(a).

The Government argues, however, that "[w]ithout a legitimate and reasonable expectation of privacy, the Fourth Amendment is not invoked, and the protections of Title III do not apply." Indeed, the statute defines "oral communication" as "any oral communication uttered by a person *exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation*, but such term does not include any electronic communication." 18 U.S.C. § 2510(2) (emphasis added).[2]

## III. APPLICABILITY OF TITLE III

I find that Title III does not apply to the Government's interception of Mr. Marcello's conversations while he was incarcerated. The plain language of Title III reveals that, in the context of oral communications, the statute only applies when the participants in the conversation

_____

[2] While the sealing requirements apply to "[t]he contents of any wire, oral, or electronic communication," 18 U.S.C. § 2518(8)(a), only the definition of "oral communication" contains limiting language regarding a reasonable expectation of privacy. Defendant, however, exclusively argues that the communications at issue here are oral communications. That is, Mr. Marcello does not seek to categorize these intercepts as wire or electronic communications.

had a reasonable expectation of privacy. *See* 18 U.S.C. §§ 2510(2); 2518(8)(a). Mr. Marcello had no reasonable expectation of privacy while incarcerated at FCI Milan, thus, the statute does not apply.

I find that, because Mr. Marcello was incarcerated, he had no reasonable expectation of privacy. In *Hudson v. Palmer*, 468 U.S. 517, 525-26, the Supreme Court held that a prisoner does not have a reasonable expectation of privacy in his prison cell. If a prisoner does not have a reasonable expectation of privacy in his cell, then *a fortiori*, he does not have one in the common areas of the prison (e.g., the visiting rooms). The Fifth Circuit has also concluded that inmates do not have a reasonable expectation of privacy. *United States v. Harrelson*, 754 F.2d 1153, 1169 (5th Cir. 1985) (noting that "one who expects privacy under the circumstances of prison visiting is, if not actually foolish, exceptionally naïve"). In light of the fact that all of the conversations at issue here occurred while Mr. Marcello was incarcerated, I conclude that he did not have a reasonable expectation of privacy.

The *Harrelson* opinion also supports the broader conclusion that Title III does not apply here. *Harrelson* is the one case I found where a court actually issued a holding on facts that are on all fours with the situation here. In *Harrelson*, the incarcerated defendant's conversations with a visitor were surreptitiously recorded by an inmate in an adjacent cell. 754 F.2d 1169. The court held that Title III did not apply. *Id.* It reasoned that the conversations were not "oral communications" because the participants did not have a reasonable expectation of privacy as they spoke to each other in jail. *Id.* Like the *Harrelson* defendant, Mr. Marcello had no reasonable expectation of privacy while he was incarcerated. Therefore, Title III does not apply to the conversations at issue here.

While the Seventh Circuit did address sealing requirements in a factually analogous scenario, that case never considered whether Title III applied. In *United States v. Jackson*, 207 F.3d 910, 913-14 (7th Cir. 2000), the Government obtained evidence by concealing microphones in the visitors' badges of individuals who visited one of the defendants while he was

incarcerated. The *Jackson* court engaged in a straightforward, on-the-merits analysis of whether the Government complied with the sealing requirements. Because the opinion gives no indication that the court gave any consideration to whether Title III applies, I find the case to be of only limited value in assessing the question at hand.[3]

I note that from a public policy perspective, there is some appeal to the notion of requiring the Government to protect the integrity of intercepted recordings, irrespective of whether the Government was required to obtain a court order to intercept the recordings in the first place. That is, it is not immediately clear why prophylactic measures designed to prevent the Government from having the opportunity to alter or otherwise tamper with recorded conversations should be tied to the question of whether the targets of the investigation had a reasonable expectation of privacy. However, my duty is to give effect to the statute as written, and there is no mechanism to apply the statute in a piecemeal fashion. Therefore, unless and until Congress amends the law to impose the sealing requirements upon all intercepted communications, there is no basis to apply Title III to these communications.

In sum, because Defendant did not have a reasonable expectation of privacy in FCI Milan, the conversations the Government recorded were not "oral communications" as that term is defined in the statute. Therefore, Title III and its concomitant sealing requirements do not apply here. Defendant's motion to suppress is denied.

## IV.   ALTERNATIVE HOLDING

Had I concluded that Title III does apply here, the only communications I would have suppressed would have been the July 17 and August 8, 2003 recordings.

---

[3]Mr. Marcello cites three cases that he suggest stand for the proposition that Title III is regularly applied in prison settings. *See United States v. Amend*, 831 F.2d 373, 378 (2d Cir. 1987) ("Title III clearly applies to prison monitoring"); *United States v. Faulkner*, 323 F. Supp. 2d 1111, 1113 (D. Kan. 2004) ("Although the argument has been made that Title III was not intended by Congress to apply in prisons, it is well accepted that its protections do apply to that context."); *United States v. Lopez*, No. 86 CR 513, 1987 WL 8627, at *10 (N.D. Ill. March 20, 1987) ("[E]very court to consider the issue has rejected the contention that Congress did not intend Title III to apply to the monitoring of prison telephones."). In each of these cases, however, the language upon which Defendant relies is mere dicta.

The sealing requirements are designed to protect the integrity of recorded conversations. 18 U.S.C. § 2518(8)(a) ("The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations."). In order to ensure that recordings are protected, the statute directs that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." *Id*.

The original order authorizing the interceptions at issue here was signed on December 4, 2002. Thereafter, five subsequent orders were entered, the last of which expired on August 15, 2003. After the expiration of each of the intercepting orders, a sealing order was signed. Below, I have listed the dates for all of the relevant orders:

| No. | Intercepting Order Signed | Intercepting Order Expired | Sealing Order Signed |
|-----|---------------------------|----------------------------|----------------------|
| 1 | December 4, 2002 | January 13, 2003 | January 16, 2003 |
| 2 | January 22, 2003 | February 21, 2003 | March 3, 2003 |
| 3 | February 27, 2003 | March 29, 2003 | April 1, 2003 |
| 4 | April 16, 2003 | May 16, 2003 | June 2, 2003 |
| 5 | June 4, 2003 | July 4, 2003 | July 11, 2003 |
| 6 | July 16, 2003 | August 15, 2003 | August 25, 2003 [4] |

A.    *Extensions versus New Orders*

I conclude that the five orders entered after the original order were extensions of the first order, not new and separate orders. As a result, I need not consider the timeliness of each individual sealing order. Rather, the only question is whether the conversations recorded pursuant to the last intercepting order were timely. This is because when extensions are present, the requirement to seal does not arise until the expiration of the final extension. *See* 18 U.S.C. § 2518(8)(a); *United States v. Coney*, 407 F.3d 871, 873 (7th Cir. 2005) ("[T]he tapes should be sealed either as soon as practical after the surveillance ends or as soon as practical after the final

---

[4]Note: the July 17, 2003 tapes were not sealed until May 13, 2004.

extension order expires." (*quoting United States v. Williams*, 124 F.3d 411, 429 (3d Cir. 1997));
*United States v. Jackson*, 207 F.3d at 916 (acknowledging that the statute gives permission "to
leave the original tapes unsealed during any extension of the original surveillance warrant").

Mr. Marcello argues that the five intercepting orders entered after the original one were
not extensions, but rather new and separate intercepting orders. He points both to the gaps
between the expiration of one intercepting order and the commencement of the next one, and the
fact that the Government sought sealing orders after each intercepting order expired. The
Government, on the other hand, correctly points out that the subsequent orders at issue here all
involved the same subjects, the same location, and the same crimes as the original order.

The Third Circuit has set forth a two-element test for assessing whether subsequent
intercepting orders are extensions or new orders. *United States v. Carson*, 969 F.2d 1480, 1487-
88 (3d Cir. 1992). In elucidating the first element, the court held that "a second order need not
be entered before the expiration of the first in order to qualify as an extension so long as the
subject, location and criminal subject matter of both surveillances is the same." *Id.* The *Carson*
court framed the second element this way: "[A]n order authorizing surveillance of the same
subject, at the same location, regarding the same matter as an earlier authorized surveillance,
constitutes an 'extension' of the earlier authorization for purposes of Section 2518(8)(a) *if, but
only if, the new authorization was obtained as soon as administratively practical or any delay is
satisfactorily explained*, i.e., is shown to have occurred without fault or bad faith on the part of
the government." *Id.* at 1488 (emphasis added).

Based on the affidavit filed by Assistant United States Attorney (AUSA) John Scully
("Scully Affidavit"), and the arguments the Government presented at the June 15 hearing, I
conclude that the subsequent intercepting orders were extensions of the original order. There is
no question but that all of the intercepting orders pertained to the same case. While some of the
subjects and some of the predicate RICO acts changed in subsequent orders, this is a natural
outgrowth of a developing investigation. In addition, the gaps between the expiration of one

order and commencement of the subsequent extension have been adequately explained. The normal bureaucratic process between Main Justice in Washington, D.C. and the United States Attorneys Office in the field accounts for some delays. That process was further complicated here because two United States Attorneys' offices (one in Chicago and one in Detroit) were involved.[5] Since both of the *Carson* elements are satisfied here, I conclude that the subsequent orders were extensions of the original order. The result, therefore, is that all of the recordings made pursuant to the first five orders were timely filed because sealing orders for them were all signed before the final extension expired.

B. *Timeliness of Sealing*

Even though I determined that the subsequent intercepting orders were extensions of the original order, I nevertheless have to inquire as to the propriety of the recordings made pursuant to the July 16 intercepting order.

Had I found that Title III applied here, I would have suppressed the two days of conversations intercepted pursuant to this final order. Though the final intercepting order expired on August 15, 2003, the August 8, 2003 tapes were not sealed until August 25, 2003 (a ten-day delay). Further, the July 17, 2003 tapes were not sealed until May 13, 2004 (a delay of almost ten months). The Government seeks to minimize the ten-day delay by highlighting the fact that a number of the intervening days were weekend days. However, the Seventh Circuit has called the business day/weekend day dichotomy "irrelevant" because "the prosecutors have access to their offices even when the building in which their offices are located is closed" and "[b]ecause such tapes are accessible on weekend and holidays by the very agents who might have the inclination and incentive to tamper with them." *Coney*, 407 F.3d at 873.

As noted above, the statute requires interceptions to be sealed "immediately upon the expiration of the period of the order, or extensions thereof . . . ." 18 U.S.C. § 2518(8)(a). The

---

[5]AUSAs in Chicago were heading up the investigation. However, since Mr. Marcello was incarcerated in Michigan, the Chicago AUSAs worked in conjunction with AUSAs in Detroit to secure many of the orders.

Seventh Circuit expressly noted in *Coney* that "[t]en days is too long to be thought immediate." 407 F.3d at 873. Therefore, neither the July 17 nor the August 8 tapes were sealed "immediately."

This does not end the inquiry, however. The tapes may nevertheless be admitted if the Government can provide a "satisfactory explanation." 18 U.S.C. 2518(8)(a). A satisfactory explanation is one that is "objectively reasonable." *Jackson*, 207 F.3d at 916 (*citing United States v. Ojeda Rios*, 495 U.S. 257, at 266-67 (1990)).

The Government attempts to explain that despite the delays, the tapes were not tampered with. These efforts miss the point; proof of nontampering alone is not a substitute for a satisfactory explanation. *Ojeda Rios*, 495 U.S. at 264-65. In order to prevail, the Government must "explain not only why a delay occurred but also why it is excusable." *Id.* at 265. The Government fails—both in its brief and in the Scully Affidavit—to explain the delay in sealing the July 17 and August 8 tapes. Since the sealing was not immediate, and since the Government failed to sufficiently explain the delay, I would have excluded these conversations had I determined that Title III applied here.

## V. CONCLUSION

I conclude that Title III does not apply here, therefore Defendant's Motion to Suppress is denied. Had I determined that Title III did apply, I would have suppressed the conversations recorded pursuant to the final authorizing order, but denied Defendant's motion regarding all of the other recordings.

ENTER:

James B. Zagel
United States District Judge

DATE: Jun 19, 2007

8