# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

UNITED STATES OF AMERICA,

v.

FRANK CALABRESE, SR., *et al.*

No. 02 CR 1050
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I.   BACKGROUND

On October 18, 2007, the United States Attorney's Office sent a letter to counsel for Frank Calabrese, Sr. and copied this Court and the attorneys for Messrs. Marcello, Doyle, Schiro, and Lombardo. The letter informed Mr. Calabrese, Sr.'s attorney that, after both phases of the trial had concluded, members of the prosecution team met with one of the anonymous jurors in this matter. The letter stated that the juror contacted the prosecution team seeking a meeting. The letter goes on to state that, at the meeting, the Juror informed Mitch Mars and Markus Funk (Prosecutors) that, during one of the closing arguments, the juror observed Mr. Calabrese, Sr. say in Mr. Funk's direction "you are a fucking dead man." The Juror stated that he was able to make out what Mr. Calabrese, Sr. was saying, in part, because he heard Mr. Calabrese, Sr., and in part by reading his lips.

After receiving the letter, Defendant Joseph Lombardo moved for a hearing regarding this matter. Other Defendants referenced the letter in post trial motions as well. After the Government's initial response to Mr. Lombardo's motion, Mr. Schiro submitted a brief in which he sought a hearing. Then, after the Government's second brief on the matter, Mr. Calabrese, Sr. also filed a submission seeking a hearing.

I granted Defendants' motions in part and scheduled a hearing. The purpose was to conduct a limited inquiry into the circumstances of the event referenced in the Government's October 18 letter. I conducted the hearing in order to determine what the Juror actually saw and heard. A hearing was necessary because the implications of the matter described in the letter might depend upon whether Mr. Calabrese, Sr. actually uttered the alleged remark, or, at the very least, whether the juror in good faith believed he observed Mr. Calabrese, Sr. utter the alleged remark. That is to say, the outcome of the issues presented here would be affected if the Juror were telling the truth as he perceived it or if he made the story up out of whole cloth.

## II. THE JUROR IS TELLING THE TRUTH

After conducting the hearing, I am able to and do find that the Juror did observe Mr. Calabrese, Sr. say "you are a fucking dead man" in AUSA Funk's direction while Mr. Funk was delivering his closing argument.[1] There are three principal reasons why I make this finding: I found the juror to be credible; his testimony is largely unrebutted; and the circumstances suggest that he is telling the truth.

First, I found the juror's testimony to be extremely credible. I observed the Juror as he was answering my questions; based on his demeanor, I conclude that he was telling the truth. He explained that he was looking at Mr. Calabrese, Sr. when the remark was made, because at the time of the comment, Mr. Funk "had just said something derogatory about the testimony of Mr.

---

[1] To be clear, I cannot rule out, beyond any doubt, the possibility that Mr. Calabrese, Sr. did not actually utter the remark, but rather that the Juror misapprehended the situation. Further, I express no opinion as to whether Mr. Calabrese, Sr. may have violated 18 U.S.C. § 1503 (2000), which prohibits intimidating an officer of any court of the United States. It is immaterial whether it can be proved to a certainty that Mr. Calabrese, Sr. actually uttered the remark. I have not the slightest doubt that the Juror believes now, and believed in good faith at the time of closing argument, that he observed Mr. Calabrese, Sr. make the remark.

Calabrese." Even one of Mr. Calabrese, Sr.'s co-defendants acknowledge the credible nature of the Juror's testimony. The post-hearing brief filed on behalf of Mr. Marcello stated "we have no reason to doubt [the Juror's] credibility. As a factual matter . . . the Court may conclude that the juror saw and partially heard Frank Calabrese, Sr. direct a death threat to AUSA Markus Funk . . . ." *Defendant James Marcello's Post-Hearing Memorandum of Law Regarding Co-Defendant's Death Threat*, Docket #825, at 2.

Second, my factual finding is buttressed by the fact that the Juror's statement that he saw Mr. Calabrese, Sr. utter this remark has not been effectively rebutted.[2] True, in his post-hearing brief, Mr. Calabrese, Sr. states "[t]he Defendant denies that he made the statement or moved his lips as alleged." *Defendant Frank Calabrese, Sr.'s Position Paper as to Federal Rule of Evidence 606(b) Inquiry*, Docket #824, at 3. However, this is not a sworn statement. Furthermore, I offered all parties the opportunity to present additional evidence at the hearing, but besides the Juror and Mr. Funk, no other witnesses were called to testify. Mr. Calabrese, Sr.'s counsel had the opportunity to present evidence at the hearing—and Mr. Calabrese, Sr. did attend the hearing—yet Mr. Calabrese, Sr.'s counsel chose not to call any witnesses to rebut the

---

[2] I recognize that, in the context of a criminal prosecution, it is improper to characterize evidence as unrebutted if the defendant was the only person who could have rebutted it. *See United States v. Snook*, 366 F.3d 439, 444 (7th Cir. 2004). This rule stems from the defendant's Fifth Amendment right to remain silent. *Id.* The current matter is not a prosecution of Mr. Calabrese, Sr. for threatening a prosecutor, but rather a proceeding to determine whether post-trial relief is warranted. Moreover, Defendant is not the only person who could have refuted it.

Juror's testimony.³ Thus, the Juror's account of the event remains substantially uncontradicted in the record.

Finally, the circumstances here suggest that the juror is telling the truth. Both the Juror and Mr. Funk suggested in their testimony that reporting Mr. Calabrese, Sr.'s remark was not the principal purpose of the Juror's contact with the Prosecutors. When I asked the Juror if he explained the reason he wanted to meet with the Prosecutors, he responded, "Yeah, I mean, my primary interest was just how I had been selected as a juror, to be honest." I went on to ask: "Would it be fair to say that you had this meeting with these two prosecutors basically for a purpose other than reporting this incident?" The Juror responded: "Definitely." Also, Mr. Funk suggested that when the Juror discussed the remark, the Juror believed, or at least suspected, that the Prosecutors were already aware of Mr. Calabrese, Sr.'s alleged comment. Specifically, Mr. Funk testified that: "[T]he Juror indicated that he assumed or thought that . . . we . . . had become aware of this, and he indicated at the outset that that was his assumption, that we had known about this . . . ." This too indicates that the Juror is telling the truth rather than seeking attention.

I reject the conclusion Mr. Calabrese, Sr. offers in his post-hearing brief that the juror fabricated the story "to taint the other jurors." Had the Juror concocted the story in order to

---

³Mr. Lopez did ask Mr. Funk whether the first time he became aware of the remark was when the Juror brought it to his attention. Mr. Funk answered in the affirmative. In addition, counsel for Mr. Lombardo asked Mr. Funk whether, before the meeting with the Juror, the Government knew about what Mr. Calabrese, Sr. had said. Mr. Funk indicated that it had not. This suggests that those seated at the Government table did not observe Mr. Calabrese, Sr. make the remark. It does not establish, however, that Mr. Calabrese, Sr. did not make the remark. And it certainly does not suggest that the Juror does not honestly believe he observed Mr. Calabrese, Sr. make the remark.

engineer a guilty verdict, it seems unlikely that he would have, without prompting, decided to repeat the tale to the Prosecutors. If the Juror were plotting to ensure a guilty verdict, it would have been rational for him to let the matter lie after the trial concluded. Offering the information, unsolicited, to two federal prosecutors would only serve to subject him to additional and unnecessary duties in connection with this case, to say nothing of the risk that he would risk incurring the suspicion of others.

An alternative explanation could be that the juror had such animus for Mr. Calabrese, Sr. that he not only wanted to engineer a guilty verdict, but he also wanted falsely to accuse Mr. Calabrese, Sr. of threatening a prosecutor in order possibly to subject him to additional penalties. The key fact that subverts this theory is that the Juror's primary purpose in approaching the Government was not to report this incident. Rather, the discussion of the remark appears to have been merely one fleeting topic of conversation in a more than two-hour meeting the Juror had with the Prosecutors. This severely undermines any potential plausibility that the animus theory might have had. If the Juror's intention was falsely to implicate Mr. Calabrese, Sr., he probably would have made the reporting of the incident the centerpiece of the meeting. In addition, the Juror testified that he could, in part, make out what Mr. Calabrese, Sr. was saying audibly. The entire prosecution team, including several federal law enforcement agents were seated between the Juror and Mr. Calabrese, Sr.; the juror was aware of this. Thus, if the Juror were going to invent this story, it is more likely that he would have said that he only read Mr. Calabrese, Sr.'s lips but did not actually hear anything. If the story were false, this would have decreased the likelihood that the Prosecutors would debunk the lie because the people seated at the Government table would not have been in as good a position as the Juror to visually observe Mr.

5

Calabrese, Sr. The notion that the Juror is so devious that he just casually mentioned his concocted story to the Prosecutors and then added a detail that seems to undermine his story in a larger scheme to enhance his believability strains credulity. The far more likely scenario—and the one I accept—is that the Juror is faithfully communicating what he perceived.

I analyze these contentions because this matter requires great care. In fact, the demeanor of the Juror and the manner in which he recounted the relevant events persuades me that he spoke the truth as he saw it. In sum, the Juror is credible, his testimony is essentially unchallenged, and the circumstances tend to support his testimony. The proposition Mr. Calabrese, Sr. offers in his brief—that the Juror fabricated this story— is belied both by the evidence before me and the facts and circumstances present here.

### III.     **DEFENDANTS ARE NOT ENTITLED TO ANY RELIEF AT THIS TIME**

Upon concluding that the Juror did observe Mr. Calabrese, Sr. utter this remark, the task thus becomes assessing what the implications are, if any, of this event. Only two of the Defendants filed post-hearing briefs: Mr. Calabrese, Sr. and Mr. Marcello. Mr. Marcello seeks to characterize this as just the latest in a litany of prejudicial episodes that he argues collectively entitle him to a new trial. Essentially, Mr. Marcello argues that Mr. Calabrese, Sr.'s behavior was so outrageous that his four co-defendants were denied their fundamental right to a fair trial and thus deserve a new trial. While I do not deny that Mr. Marcello has the right to make this argument, it is outside the ambit of the hearing I conducted, and thus I will not consider it here. Mr. Marcello and his co-defendants have all filed post-trial motions seeking a judgment of acquittal, or, in the alternative, a new trial. I will address the arguments concerning prejudice and severance in the context of those motions.

Mr. Calabrese, Sr., quite obviously, takes a different tack. He makes two principal arguments. First, he argues that the Juror concocted the story in an effort to taint his fellow jurors and engineer a guilty verdict. This is wrong in fact. Second, he seems to argue that even if the Juror is not lying, this still represents extraneous evidence that warrants, at minimum an inquiry of the remaining jurors, and possibly a new trial.

Mr. Calabrese, Sr.'s second point—raised both at the hearing and in his briefs—is that the remark is extraneous evidence and therefore some additional action (an examination of the other jurors, a new trial, or something in between) is required. Having determined that the Juror did observe Mr. Calabrese, Sr. make the remark, I now conclude that this is not extraneous evidence.[4] Therefore, it was not inappropriate for the jury to observe it, and no further action is now required.

It is axiomatic that there is nothing improper about a jury observing a defendant's courtroom demeanor during trial. In an 1895 case, the Supreme Court quoted with approval instructions that specifically advised a jury to consider the defendant's "demeanor and conduct upon the witness stand *and during the trial*." *Reagan v. United States*, 157 U.S. 301, 308-09 (1895) (emphasis added); *see also Waller v. United States*, 179 F. 810, 812 (8th Cir. 1910) (explaining that a jury may consider "a defendant's demeanor in the courtroom while undergoing a trial for crime."). Furthermore, Professor Wigmore commented that "it is as unwise to attempt the impossible as it is impolitic to conduct trials upon a fiction; and the attempt to force a jury to become mentally blind to the behavior of the accused sitting before them involves both an

---

[4]I need not and do not reach the question of whether this would have been "extraneous evidence" had I concluded that the Juror fabricated the story about Mr. Calabrese, Sr. uttering the remark.

7

impossibility in practice and a fiction in theory." 2 J. Wigmore, *Evidence* § 274 (J. Chadbourn rev. ed. 1979); *see also* H. Underhill, *Criminal Evidence* § 125 n. 9 (5th ed. 1956) ("Practically it is impossible to prevent jurors from observing the appearance and behavior of the accused very closely while he is in court during the trial. They will naturally draw inferences therefrom either favorable or unfavorable to him. The information thus obtained is evidence, and, doubtless, many a verdict has been determined thereby."). It is neither possible nor, in fact, would it even be a worthy policy goal to prevent jurors from observing a defendant's demeanor in the courtroom. Accordingly, the fact that a juror did, in this case, observe a defendant's behavior is not particularly exceptional nor does it require me to take any specific action. The premise of Defendant's argument is that anything which cannot be embodied in the written record is extraneous. This, I think, never has been the law.

I note that this is not a case in which the Government *commented* upon Mr. Calabrese, Sr.'s courtroom demeanor, say, in its closing argument. If it were, I would be confronting a different question altogether. *See United States v. Schuler*, 813 F.2d 978, 981 (9th Cir. 1987) ("[I]n the absence of a curative instruction from the court, a prosecutor's comment on a defendant's off-the-stand behavior constitutes a violation of the due process clause of the fifth amendment."); *United States v. Carroll*, 678 F.2d 1208, 1209-10 (4th Cir. 1982) ("[T]he prosecutor's reference to the courtroom behavior of the defendant was improper . . . .").[5] Rather,

---

[5]There are also a number of cases that discuss whether a prosecutor's comments about a defendant's demeanor during trial should be construed as commentary on the defendant's failure to testify. *See Gomez v. Ahitow*, 29 F.3d 1128, 1136 (7th Cir. 1994); *United States v.. Gatto*, 995 F.2d 449, 455-56 (3d Cir. 1993); *Maiello v. Edwards*, 1998 WL 230956, at *4 (S.D.N.Y. 1998). These issues are not implicated here, both because the Government did not comment on Mr. Calabrese, Sr.'s demeanor and because Mr. Calabrese, Sr. *did* take the witness stand.

this is a case where, simply by virtue of being situated in close proximity to him, a juror was able to observe Mr. Calabrese, Sr.'s behavior in the courtroom.

It is a separate question whether a defendant's demeanor in the courtroom constitutes evidence.[6] At least one dissenting court of appeals judge believes that it does. *See Schuler*, 813 F.2d at 983 (Hall, J., dissenting) ("The principle that a defendant's courtroom demeanor is evidence is well-settled.").[7] There is not unanimity on this question, though. *See United States v. Mendoza*, --- F.3d ---, 2008 WL 788607, at *6 n.2 (5th Cir. March 26, 2008) (disagreeing with Judge Hall's conclusion in her *Schuler* dissent). But that question need not be answered for purposes here. If I were to side with Judge Hall and conclude that a defendant's behavior in the courtroom *is* evidence, then there is nothing more to say. Quite clearly, there is nothing improper about a jury considering evidence.

Even if I were to conclude that a defendant's demeanor in the courtroom is not evidence, it would not alter my conclusion that no further action (a new trial or otherwise) is warranted here. That is because we do not know, nor will we ever know—because of Federal Rule of

---

[6]It is possible that Mr. Calabrese, Sr.'s behavior here could constitute evidence even if, as a general rule, a Defendant's courtroom behavior does not. Because Mr. Calabrese, Sr. testified at trial, one could argue that his behavior in the courtroom would be admissible for the jury to consider in weighing Mr. Calabrese, Sr.'s credibility.

[7]The thrust of the dispute between the majority and the dissent in *Schuler* deals with whether it is reversible error for a prosecutor to comment on a defendant's courtroom behavior (the majority said yes, Judge Hall disagreed). That issue is not implicated here. The question of whether a defendant's courtroom demeanor is *evidence* was more of an ancillary issue in *Schuler*. That said, even the majority opinion in *Schuler*—although it holds that a defendant's courtroom demeanor is not evidence—actually counsels against granting a new trial or providing any other relief here. That is so because, unlike the defendant in *Schuler*, Mr. Calabrese, Sr. testified in his own defense. The *Schuler* majority held that "[w]hen a defendant chooses to testify, a jury must necessarily consider the credibility of the defendant. In this circumstance, courtroom demeanor has been allowed as one factor to be taken into consideration." *Schuler*, 813 F.2d at 981 n.3.

9

Evidence 606(b)—whether this event had any impact whatsoever on the jury's deliberations.[8]
Therefore, all that is left is the proposition—discussed more fully below—that there is nothing improper about jurors observing defendants' behavior in court. Moreover, I instructed the jury that it was to judge this case solely on the evidence. I further instructed the jury that the evidence consisted primarily of testimony given from the witness stand and stipulations. I must assume that the jury followed my instructions. *See Shannon v. United States*, 512 U.S. 573, 585 (1994); (*citing Richardson v. Marsh*, 481 U.S. 200, 206 (1987)). Thus, irrespective of whether the remark is deemed "evidence" or not, Mr. Calabrese, Sr. is not entitled to any relief.

It should be obvious that Defendant is not entitled to a new trial (or any other relief) by virtue of the fact that a juror observed his behavior in court. As one court noted, "it is inevitable that jurors will observe a defendant at counsel table during the course of a trial. Some jurors may form opinions from these observations regardless of instructions given them by the court.[9] This is a natural consequence of a defendant's decision to exercise his right to be present at trial." *Mendoza*, --- F.3d ---, 2008 WL 788607, at *6.[10]

---

[8]That rule, in pertinent part, states: "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith." Fed. R. Evid. 606(b).

[9]As noted above, I instructed the jury that it was to judge this case solely on the basis of the evidence.

[10]The *Mendoza* court affirmed a conviction, despite the fact that it deemed the prosecutor's reference to the non-testifying defendant's courtroom demeanor in closing argument to be error. *Mendoza*, --- F.3d ---, 2008 WL 788607, at *6. Here, unlike in *Mendoza*, the Government did not comment upon Defendant's behavior in the courtroom.

It is quite clear to anyone who has seen a jury that not all jurors look at the same things at any given time. Some look at the witness while others at the lawyers. Some look at the exhibits while others at their notes. And, perhaps, some look at the ceiling or the clock. Some jurors, and an occasional judge, may even close their eyes to listen more closely to what is being said. It is implied in our practice that jurors may speak to other jurors about what they believe they noticed that other jurors may not have seen.

A recent book by Professor Marc Galanter examining the origin of lawyer jokes and their role in our society recounts a widely told story (fictional, I suspect) that reifies the point that jurors may observe criminal defendants during trial:

> A noted criminal defense lawyer was making the closing argument for his client accused of murder, although the body of the victim had never been found. The lawyer dramatically turned to the courtroom's clock and, pointing to it, announced, "Ladies and gentlemen of the jury, I have some astounding news. I have found the supposed victim of this murder to be alive! In just ten seconds, she will walk through the door of this courtroom."
>
> A heavy quiet suddenly fell over the courtroom as everyone waited for the dramatic entry.
>
> But nothing happened.
>
> The smirking lawyer continued, "The mere fact that you were watching the door, expecting the victim to walk into this courtroom, is clear proof that you have far more than even a reasonable doubt as to whether a murder was actually committed." Tickled with the impact of his cleverness, the cocky lawyer confidently sat down to await acquittal.
>
> The jury was instructed, filed out, and filed back in just ten minutes with a guilty verdict.
>
> When the judge brought the proceedings to the end, the dismayed lawyer chased after the jury foreman: "Guilty? How could you convict? You were all watching the door!"
>
> "Well," the foreman explained. "Most of us were watching the door. But one of us was watching the defendant, and he wasn't watching the door."

Marc Galanter, *Lowering The Bar, Lawyer Jokes & Legal Culture* 56 (The University of Wisconsin Press) (2005).

In all the cases cited above dealing with prosecutors commenting on a juror's behavior during trial, none of the opinions appeared to even consider the idea that the jury's observation of the defendant's behavior—standing alone without prosecutorial comment—might entitle the defendant to a new trial. And it would be quite asymmetrical indeed if a defendant were to receive the benefit of a new trial based on his or her own behavior in the courtroom. A defendant is not entitled to relief stemming from his own courtroom misconduct. *See United States v. Harris*, 2 F.3d 1452, 1456 (7th Cir. 1993) (*citing United States v. Chaussee*, 536 F.2d 637, 641 (7th Cir. 1976)). A defendant seeking relief in this instance is somewhat like the apocryphal child who murders his parents and then asks the court to have mercy on an orphan. If we established a rule which provided for a new trial anytime a juror observed a defendant acting in a way that could potentially be prejudicial, soon we might be forced to have screens separating defendants and juries.

## IV.  CONCLUSION

Defendant's request for additional relief is DENIED.


ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: April 10, 2008